UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TONIE M. HORLICK,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | NO. C11-1439-RSM-JPD<br><br>REPORT AND RECOMMENDATION |

Plaintiff Tonie M. Horlick appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be reversed and remanded.

## I. FACTS AND PROCEDURAL HISTORY

At the time of her administrative hearing, plaintiff was a 41 year-old woman with a GED and one year of technical college education. Administrative Record ("AR") at 40. Her past work experience includes employment as a receptionist in a doctor's office. AR at 26. Plaintiff was last gainfully employed in 2006. AR at 40.

REPORT AND RECOMMENDATION - 1

On May 30, 2008, plaintiff filed a claim for SSI payments and an application for DIB, alleging an onset date of February 28, 2006. AR at 16. Plaintiff asserts that she is disabled due to fibromyalgia, obesity, affective disorder, and anxiety disorder. AR at 18.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 16. Plaintiff requested a hearing which took place on March 1, 2010. AR at 34-73. On May 14, 2010, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 16-28. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-3, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 3.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a

whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Ms. Horlick bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.  DECISION BELOW

On May 14, 2010, the ALJ issued a decision finding the following:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2009.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of February 28, 2006 through her date last insured of March 31, 2009.

3. Through the date last insured, the claimant had the following severe impairments: fibromyalgia, obesity, affective disorder, and anxiety disorder.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c). She could lift and/or carry 50 pounds occasionally and 25 pounds frequently. She could stand and/or walk with normal breaks for a total of about six hours in an eight hour workday. She could sit with normal breaks for a total of about six hours in an eight hour workday. She could push and/or pull (including operation of hand and/or foot controls) unlimited other than as shown for lift and carry. The claimant could occasionally climb, balance, stoop, crouch and crawl. There were no visual or communication limitations. The claimant was required to avoid concentrated exposure to extremes of cold, wetness, and humidity; i.e., outdoor work. She was precluded from working around hazardous machinery and from working at heights. The claimant had the mental capacity to adequately perform the mental activities generally required by competitive, remunerative work as follows: understand, remember and carry out simple 2 to 3

step instructions required of unskilled work. She had average ability to perform sustained work activities (i.e. can maintain attention and concentration; persistence and pace) in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) within customary tolerances of employers rules regarding sick leave and absence. She could make judgments on simple work-related decisions required of unskilled work; could respond appropriately to supervision, co-workers and; and could deal with changes all within a stable work environment. The claimant could not deal with the general public as in a sales position or where the general public was frequently encountered as an essential element of the work process. Incidental contact with the general public was not precluded.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1968 and was 40 years old, which is defined as a younger individual age 18-49, on the date last insured.[2]

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from February 28, 2006, the alleged onset date, through March 31, 2009, the date last insured.

AR at 18-27.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ properly evaluate lay-witness statements from plaintiff's mother?

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

1      2.      Did the ALJ properly evaluate the September 2008 Physical Residual Functional Capacity Assessment written by Lou Slak?

3.      Did the ALJ err in his evaluation of the opinions of non-examining State agency psychologists Mary Gentile, Ph.D. and Renee Eisenhauer, Ph.D.?

4.      Did the ALJ err in his assessment of plaintiff's credibility?

Dkt. No. 16 at 1-2.

## VII. DISCUSSION

### A. The ALJ Erred in His Evaluation of Lay Witness Statements

In February 2007, plaintiff's mother submitted a written statement outlining her observations of the impacts of plaintiff's impairment on her ability to work. AR at 163-71. In addition, she testified at the administrative hearing that the plaintiff lives in her home, that she sees her daily, and about plaintiff's abilities. AR at 58-62. In his opinion, the ALJ noted that the lay witness testimony supported plaintiff's allegations, so clearly the testimony was material. However, the ALJ also concluded:

> The undersigned notes that there is obvious familial bias, and Ms. Briggs has a monetary interest in the outcome of the claim. Accordingly, *the undersigned does not consider* Ms. Briggs' statements in his determination of the claimant's residual functional capacity.

AR at 26 (emphasis added).

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1513(d). Such testimony regarding a claimant's symptoms or how an impairment affects his ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919. Moreover, the "fact that a lay

REPORT AND RECOMMENDATION - 7

witness is a family member cannot be a ground for rejecting his or her testimony." *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996).

The ALJ erred by his categorical denial to consider the statements of the family. On remand, the ALJ should reevaluate plaintiff's credibility and RFC, taking into account the lay-witness testimony.

### B. On Remand, the ALJ Should Reevaluate the State Disability Determination Services Report

In his opinion, the ALJ cited to a September 2, 2008 State Agency reviewing medical consultant, who opined that plaintiff could perform medium work with additional postural and environmental limitations. AR at 25, Plaintiff's claim was assigned to Lou Slak, a single decision maker ("SDM"). AR at 350-57. Mr. Slak is not a trained physician, yet the ALJ held:

> In determining the claimant's physical residual functional capacity, the undersigned considered a September 2, 2008 [report] from the State agency's reviewing medical consultant, who opined that the claimant could perform medium work with additional postural and environmental limitations. Exhibit 21F. Although the State agency's consultant did not examine the claimant, the State agency's consultant is considered an[] expert in the Social Security Disability programs and the State agency's consultant's opinions are well supported by the medical evidence. It should also be noted that *the State agency's consultant has reviewed the medical evidence objectively, and would be unlikely to be sympathetic or prejudiced toward the interests of the claimant.* For all of these reasons, substantial weight has been given to the determinations of the State agency's consultant and the undersigned adopts those findings in determining the claimant's physical residual functional capacity. SSR 96-6p.

AR at 25 (emphasis added).

On September 14, 2010, after the administrative hearing that took place in this case, it appears that the Office of the Chief Administrative Law Judge directed ALJs to refrain from evaluating or relying upon SDM determinations as substantive evidence. *See, Consideration of Single Decisionmaker (SDM) Residual Functional Capacity Assessment and Other Findings.* This, by itself, may or may not be error, particularly since the memo came out after the

REPORT AND RECOMMENDATION - 8

administrative hearing in this case. The Eighth Circuit concluded that reliance on the non-physician SDM opinion was error in *Dewey v. Astrue*, 509 F.3d 447, 448-50 (8th Sir. 2007). The Commissioner argues it is inapposite to the facts of this case. Plaintiff disagrees. Because this matter must be remanded for the other reasons cited, it is not necessary to decide whether this issue itself would warrant remand. However, the Court is concerned by the language highlighted above. The language implicitly assumes that physicians who actually examined and treated the plaintiff would have a bias either for or against the plaintiff, which is why the ALJ gave extra weight to the non-examining, non-physician report of the SDM. This implicit assumption introduces two fundamental errors. First, there is no basis to suggest (implicitly or explicitly) that any of the examining or non-examining physicians demonstrated any bias in favor or against the plaintiff. *Compare, e.g.*, *Nguyen v. Chater*, 100 F.3d 1462, 64-5 (9th Cir. 1996). Second, taken to its logical extreme, the ALJ's reasoning would mean that a non-examining non-physician report was entitled to more weight than the report of an examining physician, contrary to well-established Ninth Circuit law. *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

On remand, the ALJ should reevaluate the plaintiff's RFC in accordance with the hierarchy of medical evidence established in *Orn*. If the ALJ decides to re-credit the opinion of Mr. Slak, he should also address in his opinion the significance, if any, that he attaches to the direction of the Chief Administrative Law Judge directive regarding SDMs.

    C.    <u>The ALJ Did Not Err in His Evaluation of Dr. Gentile's Opinion</u>

Plaintiff's third assignment of error involves the ALJ's evaluation of the opinion of Mary Gentile, Ph.D. Dr. Gentile is a non-examining State agency psychologist who prepared a Mental Residual Functional Capacity Assessment in September 2008. AR at 358-61. Dr. Gentile opined that plaintiff was not significantly limited in 17 categories, that she had

moderate limitations in 3 areas, namely the ability to maintain attention and concentration for extended periods, the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, and the ability to act appropriately with the general public. AR at 358-59. She further opined that plaintiff was "cognitively intact and capable of simple and complex tasks. Her attn, concentration and attendance would episodically wane due to subjective experience of pain and her psych sxs. Clt would do best away from the ongoing demands of the general public and crowded areas. No adaptive limitations noted." AR at 360.

The ALJ found that with respect to plaintiff's mental impairments RFC, plaintiff

> had the mental capacity to adequately perform the mental activities generally required by competitive, remunerative work as follows: understand, remember and carry out simple 2 to 3 step instructions required of unskilled work. She had average ability to perform sustained work activities (i.e., can maintain attention and concentration, p; persistence and pace) in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) within customary tolerances of employers rules regarding sick leave and absence. She could make judgments on simple work-related decisions required of unskilled work; could respond appropriately to supervision, co-workers and; and could deal with changes all within a stable work environment. The claimant could not deal with the general public as in a sales position or where the general public was frequently encountered as an essential element of the work process. Incidental contact with the general public was not precluded.

AR at 22.

Plaintiff argues that the ALJ failed to take into account the moderate limitations noted by Dr. Gentile. Dkt. No. 15 at 14-15, particularly because the Vocational Expert called to testify assumed "adequate concentration" in her testimony (AR at 67) and because Dr. Gentile's statement that plaintiff would "do best away from ongoing demands of the general public and crowded areas" did not translate to not having any but incidental contact with the public.

The ALJ did not err. First, as to the moderate limitations of concentration, persistence and pace, the ALJ took this into account in his RFC assessment, by limiting plaintiff to unskilled work involving 2 to 3 step instructions, involving simple work-related decisions. Dr. Gentile also noted that plaintiff's cognitive abilities for complex and simple tasks remained intact. As to plaintiff's argument that the ALJ ignored Dr. Gentile's opinion that plaintiff "would do best" away from crowded areas, an ALJ does not err by excluding this type of recommendation from the RFC. *See, Valentine v. Commr. of Soc. Sec. Admin.*, 574 F.3d 685 (9th Cir. 2009). The ALJ took this opinion into account by restricting the plaintiff from other than incidental contact with the public. The ALJ properly evaluated Dr. Gentile's opinion when assessing plaintiff's RFC. While resolution of the remaining issues in this case may necessitate a further review of plaintiff's RFC, the ALJ's evaluation of Dr. Gentile's opinion is not one of them.

### D. On Remand, the ALJ Should Reevaluate Plaintiff's Credibility

Plaintiff is obese. AR at 18. One of the facts cited by the ALJ to support an adverse credibility finding was that plaintiff failed to follow doctor's advice to lose weight. AR at 24. In *Orn,* 495 F.3d at 638, the court held that "failure to follow treatment for obesity tells us little or nothing about a claimant's credibility." The Commissioner argues that there are a substantial number of other reasons given for the adverse credibility finding in the record that constitute substantial evidence to support the finding. Because this matter is being remanded for other reasons, the ALJ should revisit plaintiff's credibility, and should not rely upon the failure to lose weight in reaching the decision.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

DATED this 2nd day of April, 2012.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge